Gen. 461]															461

**VEHICLE LAWS**

Environment − Statutes − Rulemaking − Regulations Governing Vehicle Emissions Inspection Program Must Conform To Federal Law

April 21, 1994

*Mr. W. Marshall Rickert*
*Administrator*
*Motor Vehicle Administration*

You have requested our opinion whether the State may adopt regulations governing waivers under its Vehicle Emissions Inspection Program ("VEIP") that would comply with State law but that would violate federal law. Specifically, you ask whether regulations may reflect the more lenient provisions in §23-202(c) of the Transportation ("TR") Article, Maryland Code, on the amount that a vehicle owner must spend on repairs before any waiver may be granted, the time in which that money must be spent, and the frequency of waivers for reasons of financial hardship.

We understand that you would prefer to adopt regulations to accord with the Maryland statute, although the violation of federal law in each instance might ultimately result in sanctions against the State. However, for the reasons stated below, this course of action is not open. Regulations known to conflict with federal law may not be proposed or adopted. Rather, under these circumstances, regulations must be adopted that conform to federal law.

**I**

**Clear Air Act Requirements and VEIP**

The Clean Air Act Amendments of 1990, Pub. L. No. 101-549, 104 Stat. 2399, established "a strong national control strategy" calling for the federal and state governments to work together in improving air quality. S. Rep. No. 101-228, 101st Cong., 2nd Sess. 3 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3385, 3389. This control strategy includes enhanced vehicle emissions inspection programs in "severe" and "serious" ozone nonattainment areas like Baltimore

and Washington. Effective on November 15, 1990, the federal statute required the Administrator of the Environmental Protection Agency ("EPA") to promulgate regulations within 18 months for the states to follow in implementing the program. 42 U.S.C. §7511a(c)(1). States were required to be in compliance within two years after the Act became law. 42 U.S.C. §7511a(c)(3)(B).

The Maryland General Assembly, in turn, undertook to establish a vehicle emissions control program "in accordance with the requirements of the federal Clean Air Act." Chapter 467 (House Bill 209) of the Laws of Maryland 1991 (bill title). The General Assembly acted soon after the Clean Air Act Amendments became law but before EPA had promulgated final regulations to guide states in implementing the Act. Chapter 467 was an Administration bill, the main purpose of which was "conforming the Vehicle Emissions Inspection Program with the Federal Clean Air Act." Maryland Department of Transportation, Statement in Support of House Bill 209 (February 12, 1991).

The General Assembly did decide, however, to include some softening provisions regarding the VEIP so as to make it "a little more palatable," according to a handwritten note by Delegate Michael H. Weir in the files of the Environmental Matters Committee. Specifically, 42 U.S.C. §7511a(c)(3)(C)(iii) specifies that when a state's enhanced program goes into effect, expenditures for emissions-related repairs must be at least $450 before any waiver is permitted; by contrast, House Bill 209 was amended so as to phase in that amount over a four-year period. TR §23-202(c)(1)(ii). The State law also gives vehicle owners credit for emissions-related expenses if incurred "within 30 days *before* the initial exhaust emissions test." TR §23-202(c)(1)(iii). Finally, "unless otherwise prohibited by federal law," the Motor Vehicle Administration ("MVA") was authorized to grant waivers extending the time for compliance because of financial hardship or unusual circumstances. TR §23-202(c)(3).

EPA's regulations, called the "Inspection/Maintenance Program Requirements," did not appear in final form until published in the *Federal Register* of November 5, 1992. Under these regulations, the enhanced state programs are to take effect January 1, 1995, when the minimum expenditure on emissions-related repairs will be $450 to qualify for a waiver; there is no phase-in period. 40 CFR §§51.360(a)(7) and 51.373(c). Only one waiver per vehicle is

allowed for reason of financial hardship. 40 CFR §51.360(a)(9). The EPA regulations also do not allow any credit for expenditures on emission-related repairs in advance of the emission test. Thus, on these issues, Chapter 467 conflicts with federal law.

The Maryland Department of the Environment ("MDE") and the MVA developed regulations to follow the Maryland statute. MDE sent a preliminary draft of VEIP regulations to the EPA regional office for review on September 15, 1993. Those regulations would have provided a phase-in period of two years, multiple extensions of time because of financial hardship, and credit for emissions-related repairs made within 30 days prior to an emissions test. A month later, these provisions were cited with disapproval by EPA. Letter from Marcia A. Spink, Chief, Air and Radiation Programs Branch, to Merrylin Zaw-Mon, Director, Air & Radiation Management Administration (October 18, 1993).

Maryland faces the possibility of federal sanctions if it fails to adopt VEIP regulations that satisfy the Clean Air Act. Governor Schaefer has already been notified, in a letter dated January 18, 1994, that an 18-month "sanctions clock" is running because Maryland did not submit its program by November 15, 1993. Letter from Stanley L. Laskowski, Acting Regional Administrator, U.S. EPA Region III. Thus, it is EPA's position that the sanctions provided for under §179 of the Clean Air Act may begin in Maryland as early as July 18, 1995, if the State does not remedy this deficiency.[1]

In your view, expressed in your letter requesting this opinion, EPA will be "hard pressed" to impose sanctions when Maryland is "in the forefront nationally" in implementing an enhanced inspection program and "has the best enhanced VEIP contract in the country...." Even if threatened sanctions are imposed, you predict that such an event would not occur until 1997. Therefore, you would prefer to follow the more permissive approach of TR §23-202(c) in adopting regulations, despite the conflict with federal law. You ask whether this approach is "tenable." As we explain in Part II below, it is not.

---

[1] The sanctions may include a 2 for 1 emissions offset ratio in nonattainment areas imposed for construction of new or modified sources, and loss of federal funding for certain highway projects. EPA has proposed regulations regarding these sanctions. 58 Fed. Reg. 51270 (October 1, 1993).

## II

## Implementation of Federal Law

Neither the federal nor the State Constitution permits State officials a choice about compliance with federal mandates. Federal law, including properly adopted federal regulations, is "the supreme Law of the Land ... anything in the Constitution or Laws of any State to the Contrary notwithstanding." Article VI, ¶2 of the U.S. Constitution. Moreover, Article 2 of the Maryland Declaration of Rights declares federal law to be "the Supreme Law of the State ...."

The conflict with 42 U.S.C. §7511a may have been unclear when TR §23-202(c) was enacted, but in light of EPA's regulations, it is clear now. Any doubt that the particular waiver provisions of the Maryland statute conflict with federal law was removed by the EPA in its October 1993 letter of disapproval. Because of this conflict, the waiver provisions in TR §23-202(c) cannot serve as the basis for regulations. Such regulations would themselves conflict with federal law and therefore could not receive the legal approval required of the Attorney General under §10-107(b) of the State Government ("SG") Article, Maryland Code, in order to be effective.[2]

Since the portions of TR §23-202(c) that conflict with federal law may not be given regulatory effect, the question is whether MDE and MVA have authority to adopt VEIP waiver regulations that conform to federal law. In our view, they have a duty to do so.

---

[2] SG §10-107(b) states that "[u]nless a proposed regulation is submitted to the Attorney General or to the unit counsel for approval as to legality," the regulation may not be adopted and cannot be effective. We have considered whether regulations might be adopted if they are "submitted to," but not approved by, the Attorney General. One commentator suggests that a requirement of such approval, as distinct from mere review and comment, means that "the discretion vested by law in the agency [is] being exercised in fact by the attorney general." Cooper, 1 *State Administrative Law* 220-21 (1965). That is not a view shared by this office. We have always understood our approval to be based on legality, not on policy, and to be required by SG §10-107(b). Our role has been so construed in dicta by the Court of Special Appeals, *Angell v. Henneberry*, 92 Md. App. 279, 285-86, 607 A.2d 590 (1992), and in practice by the Division of State Documents.

The issue comes down to one of severability − would the General Assembly have intended the grant of authority to MDE and MVA contained in TR §23-202 to be given effect had the invalidity of parts of TR §23-202(c) been known? *See Burning Tree Club, Inc. v. Bainum*, 305 Md. 53, 82, 501 A.2d 817 (1985). In concluding that the General Assembly would have so intended, we are guided by "the strong presumption 'that a legislative body generally intends its enactments to be severed if possible.'" *State v. Burning Tree Club, Inc.,* 315 Md. 254, 297, 554 A.2d 366, *cert. denied*, 493 U.S. 816 (1989) (quoting *O.C. Taxpayers v. Ocean City*, 280 Md. 585, 600, 375 A.2d (1977)). Further, "when the dominant purpose of a statute may largely be carried out notwithstanding the invalid provision, courts will ordinarily sever the statute and enforce the valid portion." *Davis v. State*, 294 Md. 370, 384, 451 A.2d 107 (1982). *See* Article 1, §23 of the Maryland Code. *See also State v. Prince Georgians for Glendening*, 329 Md. 68, 76, 617 A.2d 586 (1993).

The "dominant purpose" of Chapter 467 was to require MDE and MVA to "establish an emissions control program in the State in accordance with the federal Clean Air Act." TR §23-202(a)(1). This program "shall remain in effect as long as required by federal law." TR §23-202(a)(2). The two agencies must now act to carry out this legislative purpose in conformity with federal law: "That the delegation of authority to the MVA and [MDE] was legislatively directed and channeled to effectuate compliance with the Federal Clean Air Act in the development and implementation of a motor vehicle emissions inspection program is clear beyond question." *Department of Transportation v. Armacost*, 311 Md. 64, 82, 532 A.2d 1056 (1987). MDE and MVA would not carry out the dominant purpose of the General Assembly if they fail to adopt regulations that will gain federal approval.

## III

## Conclusion

In summary, it is our opinion that MDE and MVA should proceed with VEIP waiver regulations that conform to federal law.


J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*

Jonathan Acton, II
*Assistant Attorney General*